IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| BUMP BOXES, INC., an Illinois corporation, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case no. 19-cv-_____ |
| LUIS LICEA, | ) ) ) |
| Defendant. | ) |

**COMPLAINT**

BUMP BOXES, INC., an Illinois corporation, complains of LUIS LICEA, as follows:

### Introduction

1.  Through counsel, Defendant asserts Plaintiff violates the Americans with Disabilities Act ("ADA"). Defendant alleges Bump Boxes' website, www.bumpboxes.com (the "Website"), is inaccessible to visually impaired persons to such a degree as to violate the ADA. Defendant also asserts violation of California state law, the Unruh Civil Rights Act, premised on violation of the ADA.

2.  In a letter dated November 25, 2019, Defendant's counsel stated, "We will shortly file suit." Exhibit 1. After receiving a response from Bump Boxes attorney, Defendant responded, through counsel, "since justice delayed is justice denied for my blind clients, we intend to promptly file suit in the absence of a pre-filing resolution." Exhibit 2.

3.  Bump Boxes seeks a declaratory judgment of non-violation of the ADA and non-violation of California's Unruh Civil Rights Act.

### Parties

4.  Bump Boxes is an Illinois corporation with its principal place of business located at 7719 Pioneer Lane, Peoria, Illinois.

5.  Luis Licea, upon information and belief, resides in San Bernardino County, California.

## Nature of the Action

6. This action is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 and the ADA, 42 U.S.C. § 12188(a).[1] Bump Boxes seeks a declaration that its website does not violate the ADA or California's Unruh Civil Rights Act.

## Subject Matter Jurisdiction

7. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 relating to the adjudication of a law of the United States, specifically the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

8. Resolution of the claim concerning state law necessarily requires interpretation and application of the ADA. Thus, this Court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367(a) as it is so related to the federal claim that they form part of the same case or controversy under Article III of the United States Constitution

## Venue and Jurisdiction

9. Venue is properly in this District and this Court has jurisdiction over the Defendant.

10. The Defendant agreed to venue in this District and submitted to this Court's jurisdiction.

11. The Terms for the Website state that users of the website "submit to the personal jurisdiction of the courts located within Peoria County, Illinois."

12. The Defendant is a self-styled "tester" and purposefully visited a website of a business in this District not as a consumer, but as an advocate. As a "tester," upon information and belief, Defendant (or someone at his behest) systematically visited, analyzed, and audited the pages of The Website. Thus, upon information and belief, the Defendant, or his agent, observed the Terms, was aware of the terms and, and by continuing the visitation, analysis, and auditing the Website, agreed to them.

13. Moreover, this Court has specific jurisdiction over the Defendant and venue is proper in this District because, upon information and belief, Defendant, as an advocate and not consumer,

---

[1] 42 U.S.C. Sec. 12188(a) is the portion of the ADA providing a private cause of action.

purposefully sought out Bump Boxes and undertook a thorough review, analysis, and audit of the Website with a goal of sending a demand letter to Bump Boxes and extracting money from it.

14. Doing so, Defendant then directed and caused a letter and demand to be sent or issued to Bump Boxes in this District.

15. Defendant's actions — review, analysis audit, and sending of a letter — are all actions taken and directed at Bump Boxes, in this District.

16. Defendant's specific actions and contacts are directly related to the claims asserted. As a result, they provide this Court with specific jurisdiction and set venue in this District.

### Facts Common to All Counts

#### Bump Boxes' Business

17. Bump Boxes is an online-only retailer. It is a leading subscription box provider of products for expectant mothers, families, and those with newborn children.

18. Bump Boxes has no brick and mortar stores in California, Illinois, or any other state.

19. Bump Boxes' only physical presence is its corporate office and shipping center – all in Peoria, Illinois. Consumers cannot visit this location and purchase subscription boxes.

20. Bump Boxes offers its products through subscription boxes. Subscription boxes are a popular way to purchase products, usually of a similar theme or type,[2] on a recurring basis.

21. The Website, like many others, is constantly changing, evolving, and being developed and improved.

22. Bump Boxes consistently monitors its website for compliance with the laws of the United States, states within the United States, and foreign laws.

---

[2] For example, Quip sells electric toothbrushes, replacement toothbrush heads, and toothpaste through a subscription. One purchases the subscription and replacement toothbrush heads and toothpaste are delivered on a recommended schedule. Harry's does the same for men's razors and shaving products.

23. Development and maintenance of the Website is always aimed at complying with these laws, including the ADA, and providing all consumers with access.

24. Like other businesses, Bump Boxes suffers from a lack of standards for website accessibility from the federal government. The United States Department of Justice pushed back rulemaking as for the ADA and websites for nearly a decade. In 2018, it placed this rulemaking in the inactive list. The government's failure to clarify this issue leaves website owners and operators without clear guidelines on accessibility.

25. Assistant Attorney General Stephen E. Boyd recently explained "absent the adoption of specific technical requirements for websites through rulemaking, public accommodations have flexibility in how to comply with the ADA's general requirements of nondiscrimination and effective communication" and that "noncompliance with a voluntary technical standard for website accessibility does not necessarily indicate noncompliance with the ADA." Exhibit 3.

26. Bump Boxes consistently monitors the Website to ensure its accessibility by all potential customers. If an issue arises, even a minor one, a plan for remediation is created and the remediation occurs in a commercially reasonable time.

27. Bump Boxes undertakes these efforts not only to avoid violating the law, but also to ensure the ability to provide its products and services to all interested consumers.

28. In its most recent regular review of the Website, Bump Boxes' developers determined it was sufficiently accessible to visually impaired persons and any minor issues were immediately planned for remediation and remedied in a reasonable time, given their minor nature.

29. The Website also showcases a toll-free phone number at the top of its page.

30. This phone number is readable by screen readers.[3] So those with visual impairments are aware of it and can call it.

---

[3] Screen readers, upon information and belief, vocalize visual information that appears on a computer screen.

31. As a result, interested customers, including the visually impaired, can call this staffed telephone line and ask about Bump Boxes products and purchase them.

32. In fact, customers regularly purchase Bump Boxes' subscription boxes through this staffed phone line.

33. The website is sufficiently accessible to persons having visual impairments and, in any event, Bump Boxes provides an alternative and reasonable means for visually impaired persons to access the information contained on the Website and order.

### The Defendant and his accusations

34. Upon information and belief, the Defendant is visually impaired and uses a screen reader to read website content.

35. The Defendant has held himself out as a "tester" in other lawsuits. That is, the Defendant (or someone at his behest) visits websites for testing compliance with the ADA.

36. Upon information and belief, Defendant has filed over 150 lawsuits in San Bernardino County California since October 24, 2018.

37. Upon information and belief, Defendant is not a bona fide consumer interested in Bump Boxes products.

38. Upon information and belief, Defendant (or someone at his behest) uses an auto testing tool to identify purported accessibility issues.

39. If a use of an auto testing tool reveals a potential violation of the ADA, then the Defendant sends a demand letter demanding not only remediation of the website, but also money. *See, e.g.*, Exhibit 2.

40. The ADA does not provide monetary damages other than attorneys' fees and costs.

41. Defendant's demand for money is seemingly premised the purported violation of California state law – Cal. Civ. Code § 51.

42. Upon information and belief, if a website owner does not settle with Defendant, then he sues them in California state court.

43. Defendant has filed over 150 suits in the California state court in San Bernardino County regardless of the defendant-businesses' level of contacts with that jurisdiction.

44. Doing so hails website owners from across the country into the California state court system.

45. Upon information and belief, the Defendant (or someone acting at his behest) used a tool called Wave to review the Website.

46. Afterwards, Defendant accused Bump Boxes of running a website that violated the ADA based on its alleged inaccessibility to visually impaired persons.

47. Defendant's attorney at first did not identify his client. Exhibit 1.

48. That said, in a later email, Defendant's counsel put the Defendant's last name in the subject line of the email. Exhibit 2. The Defendant has sued many other businesses for similar claims with the same attorney.[4]

49. Defendant's counsel later forwarded a report purportedly identifying accessibility issues supporting its claims. Exhibit 4.

50. This report used a free online tool, Wave, to generate purported accessibility issues.

51. Auto testing tools, like Wave, report false positives on accessibility issues.

52. For example, a tool called Compliance Sheriff (another auto testing tool) reported a spacer image (an older way to position images using purely decorative imaging with no content) as an accessibility issue. But this is not an accessibility issue because the image has no content. Other auto

---

[4] PACER records show Mr. Ferrell represents Mr. Licea in many other suits. San Bernardino County, California, court records reveal Mr. Licea has filed over 150 antidiscrimination lawsuits.

testers even call it a feature, not an accessibility issue. Auto testing alone cannot identify accessibility issues.

53. In fact, Wave reports issues on this Court's website and on Defendant's attorneys' website. Of course, it may be that none of those are actual accessibility issues.

54. This demonstrates, human review is necessary to determine whether a website is accessible.

55. Despite sending the report as a purported "audit," nothing indicates Defendant (or someone at his behest) confirmed whether the reported items were accessibility issues.

56. At all relevant times, the Website displayed the toll-free number mentioned above.

57. At all relevant times, the Website was effectively accessible to visually impaired persons.

58. At all relevant times, the Website did not violate the ADA by reason that a vast majority of the accommodations normally sought and used by the public are accessible and usable by Defendant and other persons with disabilities.

59. At all relevant times, Bump Boxes' provided reasonable alternative accommodations to the Defendant and other visually impaired persons.

60. At all relevant times, Bump Boxes' provided equivalent facilitation to the Defendant and other visually impaired persons.

61. At all relevant times, the Website meets standards for communicative channels.

62. Upon information and belief, the Defendant suffered no actual harm stemming from purported attempts to access or use the Website.

**Count I**
**Declaratory Judgment of Non-Violation of Americans with Disabilities Act**

63. Bump Boxes incorporates the above allegations as if restated here.

64. The Website is and was effectively accessible to those with visual impairments.

65. So, the Defendant's claims of inaccessibility are unfounded.

66. Bump Boxes provided alternative and reasonable means for the visually impaired – along with any other interested consumer – to speak with a person to obtain the information available on the Website and to order the products and services available on the Website. Thus, Bump Boxes ensures reasonable access for all individuals, including the visually impaired.

67. Upon information and belief, the Defendant suffered no actual harm stemming from purported attempts to access or use the Website.

68. Bump Boxes has not and is not violating the ADA.

## Count II
## Declaratory Judgment of Non-Violation of California's Unruh Civil Rights Act

69. Bump Boxes incorporates the above allegations as if restated here.

70. Defendant claims Bump Boxes violated California's Unruh Civil Rights Act because it violated the ADA, relying on Cal. Civ. Code § 51(f).

71. As explained above, Bump Boxes did not violate the ADA.

72. Upon information and belief, the Defendant suffered no actual harm stemming from purported attempts to access or use the Website.

73. Thus, Bump Boxes did not violate California's Unruh Civil Rights Act.

## Jury Demand

Bump Boxes, Inc. demands a trial by jury on all issues so triable under Fed. R. Civ. P. 38.

WHEREFORE, Bump Boxes, Inc. requests this Court:

A. Declare the rights and legal relations of BUMP BOXES, INC. and LUIS LICEA as to the controversy outlined in this Complaint and that this declaration will have the force and effect of a final judgment;

B. Enter judgment in its favor and against LUIS LICEA on all counts, declaring BUMP BOXES, INC. has not and does not violate the Americans with Disabilities Act and California's Unruh Civil Rights Act;

C.  Award BUMP BOXES, INC. its costs to have and recover from LUIS LICEA; and

D.  Any other relief this Court deems appropriate.

                                                                                          Respectfully submitted,
Bump Boxes, Inc., by

/s/ Jonathan LA Phillips
Jonathan LA Phillips
Attorney at Law
Post Office Box 6323
Peoria, Illinois 61601-6323
Tel:   (309) 643-9016
Email: jon@jlaplaw.com